670 A.2d 165

**Ronald A. DRAPEAU, an Individual Appellant,**

v.

**JOY TECHNOLOGIES, INC., a Delaware Corporation.**

Superior Court of Pennsylvania.

Argued Sept. 26, 1995.

Filed Jan. 17, 1996.

William Wycoff, Pittsburgh, for appellant.

Richard R. Nelson, II, Pittsburgh, for appellee.

Before CIRILLO, BECK and HUDOCK, JJ.

CIRILLO, Judge:

This is an appeal from an order of the Common Pleas Court of Allegheny County. We reverse and remand.

Appellant, Ronald A. Drapeau ("Drapeau"), owned 54,764 shares of common stock in Appellee–Company, Joy Technolo-

gies, Inc. ("Joy"). Drapeau, an employee of Joy, owned the stock pursuant to an amended Employee Stockholders Agreement ("Agreement"). The Agreement provided, in part, that if Drapeau should cease to be employed with Joy, for any reason, he was required to immediately offer to sell back to Joy his shares of company stock.

In February of 1992, Drapeau voluntarily terminated his employment with Joy and immediately offered to sell his shares of stock to the company. However, Joy officers constantly attempted to dissuade Drapeau from enforcing his right to have his stock bought back by Joy. Not until after Drapeau hired counsel did Joy finally agree to enter into a Stock Purchase Agreement ("Purchase Agreement") with Drapeau. The Purchase Agreement contained the condition that Drapeau retained the right to seek recourse from Joy for additional sums due and owing under the original Agreement.[1]

In October, 1992, Drapeau filed an action against Joy alleging theories of breach of the Agreement, common law fraud and violation of the Pennsylvania State Securities Act of 1972.[2] The court sustained Joy's preliminary objections to Drapeau's second amended complaint and dismissed the fraud and securities act counts. Drapeau and Joy then moved and cross-moved, respectively, for summary judgment on the breach of contract claim. Both motions were denied by orders without an opinion.

Before trial, Drapeau filed a motion in limine to exclude testimony of a former Joy C.E.O., regarding the intent of the parties in drafting the Agreement. This motion was granted by a court of concurrent jurisdiction. Joy then renewed its

---

1. The Agreement fixed the purchase price at the market price of Joy's stock "on the fifth trading day preceding the date of purchase." If Drapeau had sold his shares to Joy, pursuant to the Agreement, immediately following his termination in February 1992, Drapeau would have received $15.75 per share—a total purchase price of $862,533.00—compared to the actual price received of $616,095.00.

2. Drapeau sought to recover damages in the amount of $246,440.00 plus costs—approximately the difference between the value of the stock in February, 1992 (the time of Drapeau's resignation) and the value in April of the same year (the actual date used to determine the market price for Joy's buyback).

motion for summary judgment which was also granted in favor of Joy. Drapeau now files this timely appeal.

Appellant raises the following issues for our consideration:

(1) Whether the trial court erred in reconsidering and overruling an interlocutory order issued by a court of concurrent jurisdiction in the same case;

(2) Whether the trial court erred in excluding evidence of the parties' intent in an agreement that had inherently ambiguous terms;

(3) Whether the trial court erred by granting defendant's motion for summary judgment based upon the conclusion that the agreement at issue was clear and unambiguous in favor of the defendant; and

(4) Whether the trial court erred in dismissing Count III of the second amended complaint where Count III accurately set forth all legal and factual averments necessary to sustain claims for common law fraud and violations of the Pennsylvania Securities Act?

Appellant properly appeals from a final order granting summary judgment. *See* Pa.R.A.P. 341(c). When we review the grant of a motion for summary judgment made under Pa.R.C.P. 1035, the appellate court's scope of review is well-settled: summary judgment is properly granted where "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Pa.R.C.P. 1035(b). Summary judgment may be granted only where the right is clear and free from doubt. *Musser v. Vilsmeier Auction Co. Inc.*, 522 Pa. 367, 369, 562 A.2d 279, 280 (1989). The moving party has the burden of proving that there is no genuine issue of material fact. *Thompson Coal Co. v. Pike Coal Co.*, 488 Pa. 198, 412 A.2d 466 (1979). The record and any inferences therefrom must be viewed in the light most favorable to the nonmoving party, and any doubt must be resolved against the moving party. *Davis v. Pennzoil*, 438 Pa. 194, 264 A.2d 597 (1970). The trial court will be overturned on the entry of summary judgment only if there has been an

error of law or a clear abuse of discretion. *Hetrick v. Apollo Gas Co.,* 415 Pa.Super. 189, 608 A.2d 1074 (1992).

■ Additionally, it is well-settled that summary judgment may not be entered where the moving party relies exclusively upon deposition testimony in order to establish that there is no genuine issue of material fact. *Penn Center House, Inc. v. Hoffman,* 520 Pa. 171, 553 A.2d 900 (1989), *citing Nanty–Glo v. American Surety Co.,* 309 Pa. 236, 163 A. 523 (1932) (holding that a court may not summarily enter a judgment where the evidence depends upon oral testimony because the testimony is still a matter of credibility for the jury to decide). Because we find that the trial court abused its discretion by granting summary judgment in favor of Joy, we reverse and remand.

Appellant first contends that the trial court improperly overruled the decision of a prior court, at the same level, by reconsidering and subsequently granting Joy's motion for summary judgment. We agree with the Appellant and hold that the trial judge erred as a matter of law in granting the motion.

■ Where a motion has been presented and decided and where no new facts are presented in the motion which is seeking the same relief, the first order should be followed based on considerations of judicial economy and efficiency. *Harrity v. Medical College of Pennsylvania Hospital,* 439 Pa.Super. 10, 653 A.2d 5 (1994). This rule prevents forum shopping because without this rule, the same issue could be raised repeatedly before different judges of the same court until a litigant finds a judge sympathetic to his or her position. *Id.* Additionally, our supreme court has stated that "absent the most compelling circumstances, a judge should follow the decision of a colleague on the same court when based on the same set of facts." *Yudacufski v. Commonwealth of Pa. Dep't of Transportation,* 499 Pa. 605, 612, 454 A.2d 923, 926 (1982). *See also Okkerse v. Howe,* 521 Pa. 509, 556 A.2d 827 (1989) (remanding case to the trial court when it was held that it is contrary to jurisprudential policy for a successor judge to rule

on a motion when the successor judge had no record basis upon which to sustain the motion); *Golden v. Dion & Rosenau* 410 Pa.Super. 506, 600 A.2d 568 (1991) (same).

In the case at hand, the judge granting summary judgment was faced with the same set of facts and no new additional evidence in the record than that which was presented to the original judge who ruled on the same motion. The only change in the record, which occurred between the preceding judge's denial of Joy's first motion for summary judgment and the subsequent order granting the renewed motion, was the exclusion of testimonial evidence by Joy's former C.E.O.

Based upon the *Nanty–Glo* rule, a case should not be summarily decided solely on the basis of a non-party's testimony. *Nanty–Glo, supra.* As such, the inclusion or exclusion of Joy's former C.E.O.'s testimony should not have been the deciding factor in determining that no genuine issue of fact existed in the case at hand. This is especially true in light of the fact that the same court would not have been able to decide a motion for summary judgment based solely on identical testimony. *Nanty–Glo, supra.* Accordingly, we find that the trial court acted neither in the interests of jurisprudence nor in a manner promoting judicial economy or efficiency by granting Joy's renewed motion for summary judgment. *Okkerse, supra.* See also *Salerno v. Philadelphia Newspapers, Inc.,* 377 Pa.Super. 83, 546 A.2d 1168 (1988) (affirming order to grant summary judgment that overruled prior judge's denial of preliminary objections because the expense of an unnecessary trial would thwart the very purpose of maintaining judicial economy and efficiency). *Cf. Rosenfield v. Pennsylvania Aut. Ins.,* 431 Pa.Super. 383, 636 A.2d 1138 (1994) (determining that successor trial judge properly granted summary judgment, contrary to preceding trial judge's order to deny same party's preliminary objections, when the trial court did not issue an opinion stating why the preliminary objections were not granted and where the successor judge was provided with *a more current and wider array of documents* upon which to base her decision than was the original trial judge); *Boyle v. Steiman,* 429 Pa.Super. 1, 631 A.2d 1025 (1993)

(holding that it was only proper for successor judge to overrule prior order of predecessor judge in a case based on additional evidence presented to successor judge); *Hutchison by Hutchison v. Luddy*, 417 Pa.Super. 93, 110, 611 A.2d 1280, 1289 (1992) (holding that where the record contains new evidence which was not in the record before the preceding judge, it is not improper for the succeeding judge to reach a different result on reconsideration of an order).

The trial court clearly abused its discretion and committed error of law by deciding that there was no genuine issue of material fact and that Joy was entitled to judgment as a matter of law. *See* Pa.R.C.P. 1035. Because this case must be remanded for a full hearing on its merits, we need not make a determination of the other issues on appeal.

Order reversed and remanded. Jurisdiction relinquished.

BECK, J., files a concurring opinion.

BECK, Judge, concurring.

I concur in the result reached by the majority. On the contract claim, I conclude that summary judgment in favor of appellee was improper. Regardless of the deposition testimony of Roy Wennerholm, the Employee Stockholders Agreement dated June 24, 1987, was ambiguous, and therefore; questions of material fact existed.

In the present litigation, both parties agree New York law applies to all questions concerning the construction, validity and interpretation of the Agreement.[1] This court, as the forum court, applies its own procedural rules even when a contractual choice of law clause provides for the application of another state's substantive laws. *See Smith v. Commonwealth National Bank*, 384 Pa.Super 65, 557 A.2d 775, 777 (1989), *allocatur denied*, 524 Pa. 610, 569 A.2d 1369 (1990) (court applied Pennsylvania standard for summary judgment

---

1. The Employee Stockholders Agreement provides that "[a]ll questions concerning the construction, validity and interpretation of this Agreement and the schedules hereto shall be governed by the internal laws and not the conflicts of laws of the State of New York." Agreement § 2.9.

even though agreement was governed by the internal laws of New York).

Pennsylvania's standard of review of a grant of summary judgment is well settled: summary judgment is properly granted where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Pa.R.A.P. 341(c). The moving party has the burden of proving there is no genuine issue of material fact. *Krause v. Great Lakes Holdings, Inc.*, 387 Pa.Super. 56, 563 A.2d 1182, *allocatur denied*, 524 Pa. 629, 574 A.2d 70 (1989). Furthermore, the record and all reasonable inferences must be viewed in a light most favorable to the non-moving party with any doubts resolved against the moving party. *Id.*

Under New York law, whether a contract is ambiguous is a question of law to be decided by the court. *Ruttenberg v. Davidge Data Systems Corp.*, 215 A.D.2d 191, 626 N.Y.S.2d 174, 175 (1995). When the meaning of the contract is ambiguous and the intent of the parties becomes an issue, a question of fact is presented and summary judgment must be denied. *Id. See Yanuck v. Simon Paston & Sons Agency, Inc.*, 209 A.D.2d 207, 618 N.Y.S.2d 295 (1994) (when contract provisions are susceptible to at least two reasonable interpretations and intent must be gleaned from disputed evidence or from inferences outside the written words, it is an issue of fact that must be resolved at trial). A contract is ambiguous when, within the context of the entire agreement, reasonable minds could differ because the language in the written contract is susceptible to more than one meaning, each as reasonable as the other. *Consarc Corporation v. Marine Midland Bank*, 996 F.2d 568 (2nd Cir.1993). As set forth below, regardless of the testimony of Roy Wennerholm [2], the language in the Employee Stockholders Agreement is susceptible to more than one reasonable interpretation; therefore, summary judgment was improper.

**2.** Mr. Wennerholm recalled negotiations of the Employee Shareholders Agreement and the parties' intention with respect to the contract provisions at issue.

At issue is the interpretation of the Employee Stockholders Agreement provision which requires the employee to immediately offer to sell back to Joy his/her shares of company stock upon termination of employment. The question raised by both parties concerns the time period in which Joy must agree to repurchase the employee's stock. The time required for the company to repurchase is important because the price of repurchase is determined by the fair market value of the stock.

On February 29, 1992, appellant voluntarily terminated his employment with appellee/Joy and immediately offered to sell his shares of company stock back to Joy. On February 25, 1992, the fifth trading day preceding the date of appellant's termination of employment, Joy's common stock was publicly traded with a market price of $15.75 per share. At a March 17, 1992 board meeting, the directors did not determine whether to repurchase appellant's stock. Appellee asserts that if a decision had been made on March 17, 1992, the purchase date would have been thirty days later on April 16, 1992, and the value date would have been April 9, 1992 (five trading days prior to the purchase deadline). However, the board of directors did not agree to repurchase appellant's stock until May 18, 1992. Appellee argues that since the decision was made on May 18, 1992 to repurchase, Joy had thirty days to complete the purchase (June 16, 1992); therefore, the value date was June 10, 1992 (five trading days before the repurchase deadline). Appellee further argues they were more than fair, because the value appellant finally received for his stock was based on the higher value of April 9, 1992. The difference between the value of the shares appellant asserts to be correct on February 25, 1992 and the value on April 9, 1992 was $4.50 per share.

Appellant argues Joy has the obligation to immediately repurchase appellant's publicly traded Class A Common Stock and the date to determine the fair market value of the stock is five trading days prior to the employee's termination. Appellant asserts the word immediately used in § 1.4(a) of the Agreement refers not only to the employee's obligation to

immediately offer the stock for repurchase upon termination, but Joy's obligation to immediately agree to repurchase the employee's stock.[3] Appellant explains the requirement that appellant immediately offer his stock for sale prevents employees from engaging in market speculation and holding onto stock in hopes of selling stock back to the company at an increased price. Appellant argues that Section 1.4(a) requires the company immediately to repurchase the employee's stock in order to prevent the company from market speculation and repurchasing at a lower price. Appellant also asserts the Employee Stockholders Agreement does not require board action when the stock is publicly traded Class A Common Stock. Appellant cites to Section 1.6(a) & (f).[4] Appellant argues whereas Section 1.6(a) requires the board of directors to meet and determine the fair market value of the shares, Section (a) also references section (f) which states that publicly traded Class A Common Stock is valued by the market price. Appellant asserts the interaction of Sections 1.6(a) & (f) requires board of director action only when the stock is not publicly traded.

3. Section 1.4(a) of the Agreement provides that upon termination, employee "(i) shall immediately offer to sell his Class A Common Stock or Capital Stock to the Company at the price determined in accordance with the provisions of Section 1.6 hereof, and the Company shall have the obligation to purchase such Capital Stock, subject only to Section 1.5 hereof and (ii) shall not be permitted, except as otherwise provided in this section 1.4, to sell any such shares to any third party."

4. 1.6(a) provides "except as otherwise provided in Sections 1.6(d) or 1.6(e) below, the purchase price per share to be paid by the Company under Section 1.4 hereof for Fully Vested Class A Common Stock shall be the fair market value per share (as determined by the Board of Directors of the Company in accordance with the provisions of Section 1.6(f))."

Section 1.6(f) states "the fair market value of Capital Stock shall be the price at which the Capital Stock would change hands between a willing buyer and a willing seller, neither being under any compulsion to buy or sell and both having a reasonable knowledge of relevant facts. Fair Market Value shall be determined as follows (i) For Class A Common Stock, the Fair Market Value shall be the market price, if the Class A Common Stock is publicly traded. If the Class A Common Stock is not publicly traded, fair market value shall be determined by the Board of Directors of the Company by taking into account all relevant factors and circumstances...."

On the other hand, appellee argues Joy's board of directors has 205 days after an employee's termination to act on the repurchase of shares.[5] Appellee next asserts the Employee Stockholder Agreement requires the board of directors to act at a regularly scheduled meeting to determine whether to repurchase the offered shares.[6] If the board decides to repurchase the shares then the purchase deadline is set for thirty days later and for publicly traded common stock, the value of the stock is determined by using the market value of the stock five trading days prior to the purchase deadline.[7]

From a reading of the Employee Stockholders Agreement, the contract is silent on when the Company must determine whether to repurchase the employee's stock and unclear on how the Company is to proceed in making its determination and completing the transaction. We find the arguments asserted by both appellee and appellant concerning the procedure and time requirements of repurchase are reasonable interpretations of the agreement. Regardless of the testimony of Roy Wennerholm, there is more than one reasonable interpretation of the agreement, and the contract is clearly ambiguous. As stated above, when a contract is ambiguous, the issue of intent of the parties is a question of fact not to be decided on a motion for summary judgment. Therefore, the

5. Section 1.4(e) states that if the board of directors did not act to repurchase the shares within 205 days following the employee's termination, the employee may then sell the stock to third parties. Appellant argues that section 1.4(e) does not apply to the present facts. Appellant asserts section 1.4(e) applies only when the company is unable to purchase the stock pursuant to section 1.5 and sections 1.4(c), (d) & (e) provide a mechanism for the employee to sell his stock to others.

6. Appellee claims that Section 1.6(a) requires the board of directors to meet and determine the fair market value of the shares.

7. Section 1.10 provides that the repurchase shall be completed within thirty days after the purchase price is determined pursuant to section 1.6. Appellee claims section 1.10 sets a purchase deadline thirty days after the board of directors decides to repurchase and requires the fair market value to be determined according to the market price five trading days prior to the thirty day repurchase deadline. Appellant, on the other hand, claims a plain reading of section 1.10 requires the thirty day completion deadline to be set from the date the purchase price is determined.

trial court's grant of summary judgment in appellee's favor was improper.

Since we have determined the Employee Stockholders Agreement is ambiguous regardless of the testimony of Roy Wennerholm, the testimony of Roy Wennerholm should be admitted under the parole evidence rule. Under the parole evidence rule, if a contract provision is ambiguous, extrinsic evidence can be properly admitted in an attempt to resolve the ambiguity. *Motor Coils Manufacturing v. American Insurance Co.,* 308 Pa.Super. 568, 454 A.2d 1044 (1982). *See Osborne v. Carmichaels Mining Machine Repair, Inc.,* 427 Pa.Super. 159, 628 A.2d 874 (1993) (stating when intent of parties is unclear as expressed in the language of the agreement, extrinsic evidence may be admitted to resolve ambiguous terms).

Appellant also appeals the trial court's grant of appellee's preliminary objections and dismissal of appellant's Count III. Count III alleged common law fraud and a violation of the Pennsylvania Securities Act. The majority opinion does not address this issue.

I would affirm the trial court's dismissal of Count III. Our standard of review of an order granting preliminary objections in the natures of a demurrer is as follows: all material facts set forth in the complaint, as well as, all inferences reasonable deducible therefrom are admitted as true for the purpose of review. *Pittsburgh National Bank v. Perr* 431 Pa.Super. 580, 637 A.2d 334, *allocatur denied,* 537 Pa. 665, 644 A.2d 1202 (1994). *See Bower v. Bower,* 531 Pa. 54, 611 A.2d 181 (1992). The question presented by a demurrer is whether on the facts averred, the law says with certainty that no recovery is possible. *Id.* A demurrer should be sustained only in cases where the plaintiff has clearly failed to state a claim on which relief may be granted. *Id.* Appellant has failed to allege a cause of action in common law fraud and has failed to allege a cause of action for a violation of the Pennsylvania Securities Act.

In order to state a cause of action for common law fraud, the plaintiff is required to establish: (1) a misrepresentation; (2) a fraudulent utterance thereof; (3) an intention by the maker that the recipient will thereby be induced to act; (4) justifiable reliance by the recipient upon the misrepresentation; and (5) damage to the recipient as the proximate result. *Woodward v. Dietrich,* 378 Pa.Super. 111, 548 A.2d 301 (1988). *See Delahanty v. First Pennsylvania Bank,* 318 Pa.Super. 90, 464 A.2d 1243 (1983). A misrepresentation need not be in the form of a positive assertion but can be a concealment which should have been disclosed, and which deceives or is intended to deceive another to act upon it to his detriment. *Wilson v. Donegal Mutual Insurance Co.,* 410 Pa.Super. 31, 598 A.2d 1310 (1991). Appellant alleges appellee's delay tactics coupled with the concealment of Joy's financial condition amounts to fraud. However, for an omission to be fraud there must be a duty to speak. Mere silence is not sufficient to constitute fraud in the absence of a duty to speak. *Wilson, supra. See Sevin v. Kelshaw,* 417 Pa.Super. 1, 611 A.2d 1232 (1992); *Smith v. Renaut,* 387 Pa.Super. 299, 564 A.2d 188 (1989) (fraud arises where there is an intentional concealment calculated to deceive or where there is a nonprivileged failure to disclose; however, while concealment may constitute fraud, mere silence is not sufficient in the absence of a duty to speak).

An independent duty to disclose information arises where there is a confidential or fiduciary relationship between the parties involved in the transaction. *Federal Land Bank of Baltimore v. Fetner,* 269 Pa.Super. 455, 410 A.2d 344 (1979) (there is no duty for lender to disclose defects in title to borrower because the relationship between borrower and lender does not create a confidential relationship). *See City of Harrisburg v. Bradford Trust Company,* 621 F.Supp. 463 (M.D.Pa.1985) (omission is actionable only where there is an independent duty to disclose omitted information and such duty exists when the party who is under an obligation to disclose stands in a fiduciary or confidential relationship to the party seeking disclosure). The Pennsylvania Supreme Court

characterized a confidential relationship as a relationship with trust and reliance on one side and a corresponding opportunity to abuse that trust for personal gain on the other. *In re Scott's Estate,* 455 Pa. 429, 316 A.2d 883 (1974) (joint tenants of a bank account created by brother and sister, without more does not place them in a relationship of confidentiality). The court went on to state that a business association may be the basis of a confidential relationship only if one party surrenders substantial control over some portion of his affairs to the other. *Id.* The Pennsylvania Supreme Court in *Union Trust Co. v. Cwynar,* 388 Pa. 644, 131 A.2d 133 (1957) stated a confidential relationship is created when "one occupies a superior position over the other—intellectually, physically, governmentally or morally—with the opportunity to use that superiority to the other's disadvantage."

Appellant and appellee are not in a confidential relationship, and appellee had no duty to disclose the financial condition of the corporation to appellant; therefore, this concealment is not actionable as fraud. Whereas appellee is in the position to accept appellant's offer to purchase the corporation's stock, appellee has no other control or position of superiority over appellant. Furthermore, appellant failed to cite, and independent research failed to discover any case law creating a duty to disclose on appellee.[8] In fact, once appellant's breach of contract claim is disposed of and the ambiguity in the Employee Stockholder Agreement resolved, appellant will not have a common law fraud claim because the date to value the stock will be established by the agreement and the financial condition of the corporation will be irrelevant. Since appellee does not owe a duty of disclosure to appellant, appellant cannot

8. Research did uncover a case which discussed whether a director who was purchasing stock from a shareholder had a fiduciary relationship and duty to disclose information about the value of the stock. *Binns v. Copper Range Company,* 335 Pa. 257, 6 A.2d 895 (1939). The court stated an officer or director as the purchaser of shares from a stockholder does not, in and of itself, in the absence of special circumstances create a fiduciary relationship between them as to the sale of the stock. Even though not on point, this supports our conclusion that the corporation as purchaser does not owe a duty to disclose to a shareholder seller.

state a cause of action for common law fraud based on appellee's omission.

As an additional rationale for my decision that appellant has failed to state a cause of action in common law fraud, I find appellant did not adequately allege the element of reliance. In order to state a cause of action for common law fraud, plaintiff/appellant is required to establish he justifiably relied on the omission or misrepresentation. *Woodward, supra.* Furthermore, Pennsylvania Rule of Civil Procedure 1019(b) requires fraud be plead with particularity. The Pennsylvania Supreme Court stated that "pleadings must adequately explain the nature of the claim to the opposing party so as to permit him to prepare a defense and they must be sufficient to convince the court that the averments are not merely subterfuge." *Bata v. Central–Penn National Bank of Philadelphia,* 423 Pa. 373, 224 A.2d 174 (1966), *cert. denied,* 386 U.S. 1007, 87 S.Ct. 1348, 18 L.Ed.2d 433 (1967) *See Dwyer v. Rothman,* 288 Pa.Super. 256, 431 A.2d 1035 (1981) (finding allegations do not aver fraud with particularity). Nowhere in appellant's fraud count or statement of facts has appellant alleged that he took action or refrained from taking action in reliance on appellee's omission. Appellant simply states that the tactics and omission resulted in his receiving a lower price for his stock. Appellant's statement of facts does not imply reliance, but establishes that appellant did not accept any other offer by appellee to purchase his stock because he believed the value of the stock should have been the market value of the stock based on the day he resigned. Since appellee has no duty to disclose information to appellant and since appellant failed to allege reliance in his complaint, appellant failed to state of cause of action in common law fraud and the trial court's grant of preliminary objections are affirmed.

Appellant also failed to state a cause of action for a violation of the Pennsylvania Securities Act § 1–401. 70 P.S. § 1–401 (Purdons 1993). Section 1–501 sets out enforcement mechanisms and civil liabilities. 70 P.S. § 1–501 (Purdons 1993). Section 1–501(b) establishes civil liability against a purchaser who violates § 1–401 and states the purchaser shall:

be liable to the person selling the security to him, who may sue either at law or in equity to recover the security, plus any income or distributions, in cash or in kind, received by the purchaser thereon, upon tender of the consideration received, or for damages if the purchaser no longer owns the security.

70 P.S. § 1–501(b). From the plain language of the statute, the seller can (1) recover the stock and distributions if the purchaser still owns the stock and the seller tenders the consideration he received to the purchaser or (2) recover damages but only if the purchaser no longer owns the security. Appellant's only request for relief is damages; however, he failed to allege that appellee no longer owned the stock. Furthermore, appellant did not request the return of the stock, nor allege that he had tendered the consideration received back to the purchaser. As a result appellant has failed to state a cause of action for a violation of Pennsylvania Securities Act.

I would affirm the trial court's dismissal of Count III.