575 A.2d 122

Ralph HOFFMAN and Marie Hoffman, Appellants,

v.

SUN PIPE LINE COMPANY, Tri–State Telecommunications, Inc., Davis Enterprises, Maple Shade Cable, Inc., Newtown Cablevision, Inc., E.A. Designs, Ltd., Pennsylvania Once Call System, Inc., Jan Gouza and Pickering, Corts & Summerson

v.

Charles T. BOWMAN and Barbara Bowman

v.

LANDMARK REALTY and Allen J. Davis, Additional Defendants.

Superior Court of Pennsylvania.

Argued Jan. 24, 1990.

Filed May 18, 1990.

Patricia M. Starner, Philadelphia, for appellants.

Albert M. Saltz, Philadelphia, for Sun Pipe Line, appellee.

Before CIRILLO, President Judge, and HOFFMAN and BROSKY, JJ.

HOFFMAN, Judge:

This appeal arises from the order dated May 22, 1989, granting appellee's motion for summary judgment. Appellants contend that the trial court erred in granting the motion for summary judgment because a genuine issue of material fact exists as to whether their injuries were foreseeable to appellee. For the reasons that follow, we agree with the trial court that appellee was entitled to judgment as a matter of law; we therefore affirm the order below.

On November 21, 1982, while installing underground cable, Tri-state Telecommunications, Inc., punctured a gas pipeline owned by appellee Sun Pipe Line Company. The puncture caused approximately 50,000 gallons of gasoline to leak into the ground near appellants' town house development, Newtown Crossing in Bucks County, Pennsylvania.[1] On April 15, 1985, appellants commenced an action against appellee and others[2] to recover damages they allegedly suffered as a result of the gasoline spill. In their complaint, appellants alleged that, in December of 1982, they signed an agreement of sale and paid a $9,000.00 deposit for property located at 10 Westwood Court in Newtown Crossing. Appellants alleged that neither the sellers nor the

1. We note that, as a result of injuries arising out of the November 12, gasoline accident, a group of plaintiffs consisting of "[a]ll owners and residents of homes in the housing development known as Newtown Crossing, Newtown, Bucks County, Pennsylvania who either owned or had a contract to purchase (and have since purchased) or were residing in the development on November 12, 1982," were certified as a class in a suit against Sun Pipe Line. *See* Cipriani v. Sun Pipe Line Co., 46 Bucks Co. L.R. 249 (1985).

2. Several of the defendants were joined later. The complaints against the additional defendants were based upon contract theories of fraud, misrepresentation, and mistake, in addition to the tort claim filed against Sun Pipe Line.

realtor informed them that the spill had occurred. It was not until April 1, 1983, approximately a month prior to settlement, that appellants first learned of the gasoline spill and that several homes in the development had been contaminated with gasoline fumes. At that time, they were advised that they could not be released from their agreement of sale without losing their deposit and "other damages." On April 29, 1983, settlement took place. Appellants alleged further that between April 29, 1983, and the eventual sale of their home in August of 1988, they suffered personal injuries and property damage directly caused by the puncture of the pipeline. Specifically, they alleged that this damage resulted from the negligence or strict liability [3] of appellee. In October of 1988, appellee filed a motion for summary judgment, asserting that appellants could not recover because they were not foreseeable plaintiffs and therefore appellee owed no duty to them.[4] Subsequently, on October 28, 1988, appellants filed an answer to appellee's motion alleging that genuine issues of fact existed as to whether appellants were foreseeable plaintiffs.[5] On May 22, 1989, after the motions were briefed and argued, the trial court granted appellee's motion for summary judgment. This timely appeal followed.

Our standard of review from the grant or denial of a motion for summary judgment is well-settled.

A motion for summary judgment may properly be granted when the pleadings, depositions, answers to interroga-

---

**3.** Appellants alleged that appellee was strictly liable (a) because it was engaging in ultrahazardous activity, or the miscarriage of an ultrahazardous activity, namely the activity of operating an underground pipeline for the movement of a liquid petroleum product through a residential neighborhood, and (b) pursuant to the law of the Commonwealth of Pennsylvania, 15 Pa.S.A. § 3351(g). *See* Complaint at 7–8.

**4.** In addition, appellee claimed that appellants were estopped as a matter of law because they knowingly came to the nuisance and because their claims were barred by the statute of limitations. At the trial level, the court granted appellee's motion on the ground that appellants were not foreseeable plaintiffs without specifically ruling on the other issues. Because of our disposition of appellants' first claim, we need not address these alternative bases for granting the motion.

**5.** Appellants also responded to appellee's affirmative defenses.

tories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *See Hedlund Mfg. Co. v. Weiser,* 517 Pa. 522, 539 A.2d 357 (1988); *see also Gabovitz v. State Auto Ins. Ass'n,* 362 Pa.Super. 17, 523 A.2d 403 (1987); Pa.R.Civ.P. 1035(b). Summary judgment may be entered only in cases that are clear and free from doubt. *Weiss v. Keystone Mack Sales, Inc.,* 310 Pa.Super. 425, 430, 456 A.2d 1009, 1011 (1983). Additionally, the record must be examined in the light most favorable to the non-moving party, accepting as true all well-pleaded facts in its pleadings and giving that party the benefit of all reasonable inferences drawn therefrom. *Hower v. Whitmark Assoc.,* 371 Pa.Super. 443, 445, 538 A.2d 524, 525 (1988); *Ferguson v. King,* 362 Pa.Super. 543, 524 A.2d 1372 (1987). Moreover in summary judgment proceedings, the court's function is not to determine the facts, but only to determine if a material issue of fact exists. *French v. United Parcel Service,* 377 Pa.Super. 366, 372, 547 A.2d 411, 414 (1988). Thus an order granting a motion for summary judgment will not be reversed unless the court below has committed an error of law or clearly abused its discretion. *Ackler v. Raymark Indus. Inc.,* 380 Pa.Super. 183, 185, 551 A.2d 291, 292 (1988); *Jones v. Keystone Ins. Co.,* 364 Pa.Super. 318, 321, 528 A.2d 177, 179 (1987); *Miller v. Federal Kemper Ins. Co.,* 352 Pa.Super. 581, 585–86, 508 A.2d 1222, 1225 (1986). *Kaller's Inc. v. Spencer Roofing,* 388 Pa.Super. 361, 364, 565 A.2d 794, 795–96 (1989). In granting the motion for summary judgment, the trial court reasoned as follows:

Clearly, [appellants] as subsequent purchasers did not have a claim against [appellee] because they were not foreseeable claimants at the time of the pipeline incident. [Appellants] were not residents of the area. They did not own any property in the affected area. Further, [appellants] did not have a contract to purchase a home in [the] development at the date of the spill.

To conclude, we hold that [appellee's] liability is limited only to those certified within the class described in *Cipriani v. Sun Pipe Line Company, et al.*, 46 Bucks Co. L.R. 249 (1985). The class was comprised only of those foreseeable claimants, particularly, "all owners and residents of homes in the housing development known as Newtown Crossing, Newtown, Bucks County, Pennsylvania, who either owned or had a contract to purchase a home (and did so purchase), or were residing in the development on November 12, 1982." 46 Bucks Co. L.R. 249, 261. To hold otherwise, would be to create a never-ending pool of claimants by purchase.

Trial Court Opinion at 3–4.

Appellants contend that the trial court's conclusion regarding their negligence claim[6] was erroneous because a factual issue exists concerning whether their injuries were foreseeable to appellee, and thus a jury should hear their case. With respect to the duty owed, appellants maintain that appellee could foresee that appellants, as subsequent purchasers of a home in Newtown Crossing, would be injured by the gas spill and therefore appellee had a duty to protect them from that harm. Appellee, on the other hand, contends that it owed no duty to appellants because they did not own their home at the time of the November 12, 1982, spill and, therefore, they were not foreseeable plaintiffs.

**6.** The order below dismissed appellants' complaint in its entirety. Although their complaint sounded in strict liability as well as negligence, appellants make no argument on appeal concerning their strict liability claims. Therefore, we offer no opinion on whether the dismissal of the strict liability claims was appropriate. We note, however, that in *Pier Cipriani v. Sun Pipe Line Co.*, 45 D & C 3rd 135 (1986), the class action suit against Sun Pipe Line Co., which arose out of the same accident (the class had been certified in Cipriani v. Sun Pipe Line Co., 46 Bucks Co. L.R. 249 (1985)), the Bucks County Court of Common Pleas found Sun Pipe Line Co. strictly liable for injuries resulting from the leakage. Liability was premised both on § 520 of the *Restatement (Second) of Torts*, for pipeline accidents causing the release of potentially violative and explosive gas, and on 15 Pa.S.A. § 3351(g), for leakage and breaking caused by the negligence of third parties. Sun appealed the decision to this Court, which quashed the appeal. Our Supreme Court granted allocatur, and reversed. Thus, the appeal in *Cipriani* presently is before the Superior Court.

Appellants cite to no authority, and our research reveals none, that would impose upon a tortfeasor a duty not only to the original owner of a home which has been contaminated as a result of the tortfeasor's negligence but also to subsequent purchasers of that home. Of course, the novelty of appellants' theory alone is not sufficient cause to reject their claim; instead, the question whether to impose a duty is essentially one of policy. After careful consideration, we are of the view that it would be inappropriate on the facts of this case, to extend appellee's duty to encompass subsequent purchasers.

" '[D]uty' is a question of whether a defendant is under any obligation for the benefit of the particular plaintiff ...," W. Keeton, D. Dobbs, R. Keeton & D. Owen, *Prosser and Keeton on the Law of Torts,* § 53, at 356 (5th ed. 1984) [hereinafter Prosser & Keeton], and, unless there is a duty upon the defendant in favor of the plaintiff which has been breached, there can be no cause of action based upon negligence. *See Alumni Ass'n v. Sullivan,* 369 Pa.Super. 596, 535 A.2d 1095 (1987), *affirmed,* 524 Pa. 356, 572 A.2d 1209 (1990). We should note, however, that to frame the inquiry in terms of "duty" can be misleading, as Prosser and Keeton have recognized:

> The statement that there is or is not a duty begs the essential question—whether the plaintiff's interests are entitled to legal protection against the defendant's conduct. It is therefore not surprising to find that the problem of duty is as broad as the whole law of negligence, and that no universal test for it ever has been formulated. It is a shorthand statement of a conclusion, rather than an aid in analysis in itself.

Prosser and Keeton, *supra* § 54, at 357–58 (footnote omitted); *see also id.* § 54, at 358 ("it should be recognized that 'duty' is not sacrosanct in itself, but is only an expression of the sum total of those considerations of policy which lead the law to say that the plaintiff is entitled to protection."). Because questions concerning "duty" arise in ever-changing contexts, courts have employed a variety of analytical ap-

proaches. For example, courts have spoken of both "foreseeability" (of a particular plaintiff *or* a particular harm) and "proximate cause" when attempting to delineate the scope of a defendant's duty. In *Sullivan, supra,* we summarized the interplay of these approaches, as follows:

Duty, in any given situation, is predicated upon the relationship existing between the parties at the relevant time. *Zanine v. Gallagher,* 345 Pa.Super. 119, 497 A.2d 1332, 1334 (1985). Where the parties are strangers to each other, such a relationship may be inferred from the general duty imposed on all persons not to place others at risk of harm through their actions. *Id.* The scope of this duty is limited, however, to those risks which are reasonably foreseeable by the actor in the circumstances of the case. *Id.*

Only when the question of foreseeability is undeniably clear may a court rule as a matter of law that a particular defendant did not have a duty to a particular plaintiff. *Migyanko v. Thistlewaite,* 275 Pa.Super. 500, 419 A.2d 12, 14 (1980); also see *Palsgraf v. Long Island Railroad Co.,* 248 N.Y. 339, 162 N.E. 99, 100 (1928). Moreover, the question of foreseeability is not to be confused with the question of legal or proximate causation. *Little v. York County Earned Income Tax Bureau,* 333 Pa.Super. 8, 481 A.2d 1194, 1197 (1984). Even where harm to a particular plaintiff may be reasonably foreseeable from the defendant's conduct, and that conduct is the cause-in-fact of the plaintiff's harm, the law makes a determination that, at some point along the causal chain, liability will be limited. The term "proximate cause", or "legal cause" is applied by courts to those considerations which limit liability, even where the fact of causation can be demonstrated. Because of convenience, public policy, or a rough sense of justice, the law arbitrarily declines to trace a series of events beyond a certain point, as no longer a "proximate" or "legal" consequences naturally flowing from the wrongdoer's misconduct. See *Mazzagatti v. Everingham by Everingham,* 512 Pa. 266, 516

A.2d 672, 675 (1986); see also *Palsgraf,* supra, 162 N.E. at p. 103. To put it simply, at a certain point, negligent conduct will be viewed as too remote from the harm arising to the plaintiff, and thus not a substantial factor in bringing about the plaintiff's harm.

369 Pa.Super. at 601–02, 535 A.2d at 1098. Whether the analysis proceeds in terms of "duty", "foreseeability", or "proximate cause", we must remain mindful of Prosser and Keeton's admonition that our essential inquiry in these cases is the same:

> in all of these proposed rules and formulae the courts and the writers have been groping for something that is difficult, if not impossible, to put into words: some method of limiting liability to those consequences which have some reasonably close connection with the defendant's conduct and the harm which it originally threatened, and are in themselves not so remarkable and unusual as to lead one to stop short of them.

Prosser & Keeton, *supra* § 43, at 300.

The bulk of appellants' brief is devoted to the question of foreseeability. And, of course, we do not seriously question that it is "foreseeable" that the type of damage alleged in this case might have some effect on future purchasers of a contaminated home. However, as the authorities above emphasize, the mere fact that a plaintiff, or a harm, is "foreseeable," does not resolve our inquiry. And, after carefully reviewing appellants' complaint, we are of the opinion that the harm allegedly suffered by appellants is not so closely connected to Sun's original conduct to warrant imposing liability. As alleged in the complaint, the conduct which formed the basis for Sun's negligence consisted of the installation of the underground cable system, its maintenance and operation of the pipeline; its failure to repair the pipeline promptly after the spill, and its failure to inform the residents of Newtown Crossing of the consequences of the spill.

As a result of appellee's allegedly careless installation and maintenance, Tri–State punctured the gas line in 1982,

thereby causing liquid petroleum to permeate the soil throughout the development and penetrate the air with petroleum fumes. At the time of this spill, appellee reasonably could expect that it might be liable to all persons in the area who suffered either personal injuries or property damage as a result of the spill.[7] Sun also might reasonably have contemplated that the amount of property damage resulting from the spill, at least in some instances, could be extensive enough that a home might be rendered uninhabitable, and therefore it might be liable for the full value of that home. Thus, at the time of the allegedly negligent conduct, appellee reasonably could expect, at the worst, to be liable for physical injuries and for property damage up to the full value of a home.

Under these circumstances, the theory of liability proposed by appellants extends far beyond the original harm threatened and, indeed, could be limitless. Under appellants' theory, Sun, instead of having its liability for property damage in any one case limited to the full value of a property, could be responsible, to succeeding property owners, for the same exact damage to a home, and to an aggregate amount far exceeding the value of any one home. To subject appellee to a result such as this would be manifestly unreasonable. Thus, we refuse to extend arbitrarily appellee's duty to encompass the protection of unidentifiable third party home owners who were not present when the spill and resulting consequences occurred.[8]

7.  We should note that, in fact, it was this class of persons, i.e., "all owners and residents of homes in the housing development known as Newtown Crossing, Newtown, Bucks County, Pennsylvania, who either owned or had a contract to purchase a home (and did so purchase), or were residing in the development on November 12, 1982," who comprised the class in the class action suit against Sun. *See* Cipriani v. Sun Pipe Line Company, et al., 46 Bucks Co. L.R. 249 (1985).

8.  At this juncture, we offer no opinion on cases where an act occurs at one time, and is not *discovered* until the tenure of a subsequent purchaser. Indeed, in this case, it is undisputed that appellants were aware of it *prior* to settlement, and yet elected to go through with the purchase of their home.

We are further persuaded that our conclusion is proper because our holding does not leave subsequent purchasers of a home such as appellants' without a remedy. As a practical matter, if a home has been damaged by such contamination, and a subsequent purchaser is made aware of it, his or her remedy is to factor the diminution in value, or the increased risk, into negotiations with the owner. If, on the other hand, the seller or realtor does not disclose the damage, and a subsequent purchaser is otherwise unaware of it, and the damage is as significant as alleged here, the remedy is to sue the seller or realtor on a contract theory.

In sum, to allow any subsequent purchaser of a home in the development to sue appellee in tort would subject it to unlimited liability for one discrete act. In assessing liability, we must draw a cut-off line based upon policy considerations. Because we find that any harm caused by the spill would be factored into the resale value of a home in Newtown Crossing by the seller who owned the home at the time of the spill and who was compensated for his/her damages, we hold that appellee's liability to owners of those homes on November 12, 1982, as a matter of public policy, does not encompass liability to a third party who subsequently purchases a home in that development which had been affected previously by the spill.

For the foregoing reasons we conclude that the trial court properly granted appellee's motion for summary judgment and we affirm the order below.

Order affirmed.