637 A.2d 334

**PITTSBURGH NATIONAL BANK, as Executor of Murial A. Laughery, Deceased, Appellant,**

v.

**Joel S. PERR, Individual and General Partner, Trading as Washington Plaza Associates, a Limited Partnership; Washington Plaza Associates, a Limited Partnership, Joel S. Perr, Individual, General Partner, John W. Galbreath and Co., Inc., a Corporation; Perr Management Company, Inc., a Corporation; Detroit Policemen and Firemen's Property Partners, a Limited Partnership, Individually and WP Apartments, Inc., a Corporation, Individually, and Together t/d/b/a WP Partnership, a General Partnership; MIG Mortgage Services, Inc., a Pennsylvania**

Corporation, Individually and t/d/b/a Detroit Policemen and Firemen's Property Partners, a Limited Partnership; Johnstown Company, a Corporation a/k/a Johnstown American Subsidiary Corporation No. 4, a Corporation; Washington Plaza Management Company, a Corporation; GFS Management of Pennsylvania, Inc., a Corporation.

Superior Court of Pennsylvania.

Argued Nov. 10, 1993.

Filed Feb. 2, 1994.

Francis C. Rapp, Jr., Pittsburgh, for appellant.

Tracey G. Vinson, Pittsburgh, for Galbreath & Co., appellee.

Before TAMILIA, HUDOCK and CERCONE, JJ.

CERCONE, Judge:

This is an appeal from the order of the Court of Common Pleas of Allegheny County, dated April 6, 1993, which granted the preliminary objections, in the nature of a demurrer, to the complaint of appellant as to its claim against appellee. We affirm.

Appellant, Pittsburgh National Bank, is the executor of the estate of Muriel A. Laughrey. According to the complaint, the decedent lived at the Washington 'Plaza Apartments in Pittsburgh, Pennsylvania. The appellee, John W. Galbreath and Co., Inc., managed the apartment complex from July 17,

1989 until July 30, 1990. During that time period, appellee employed Otis Lee Boyd as a maintenance worker. Boyd was hired on June 2, 1987, by the Perr Management Co. (hereinafter "Perr") which managed the complex at that time. From 1987, numerous and successive management companies operated the complex and employed Boyd, including appellee. Unbeknownst to any of the management entities except Perr, Boyd had a lengthy criminal record involving robbery and other theft crimes. The complaint also alleges that Boyd supported a habitual drug dependency and exhibited symptoms of a drug addict.

As part of his duties, which included routine maintenance, Boyd was permitted access to the tenants' apartments. Upon gaining entry into the residences, he was able to skim from the tenants by taking some, but not all, of the money from the wallets or purses of tenants after gaining access to their apartments. During the evening of January 11, 1991, Boyd went to the decedent's apartment under the guise of repairing plumbing in the decedent's bathroom. He intended to skim from the decedent's purse, which he hoped he would find in the decedent's bedroom. Boyd found her purse in the bathroom. While pilfering through it, the decedent confronted Boyd. A struggle ensued which culminated when Boyd strangled the decedent. He was subsequently tried, and convicted of first-degree murder. On the date of the murder, appellee did not manage the apartment complex, nor was Boyd one of its employees.

Appellant filed the underlying action for the wrongful death of the decedent against the various owners of the Washington Plaza Apartments, as well as the numerous management companies which had employed Boyd. Appellant claimed that the defendants negligently hired Boyd and failed to warn the tenants of his dangerous proclivities. Appellee filed preliminary objections in the nature of a demurrer, which the trial judge granted. The trial judge reasoned that on the date of the murder appellee did not employ Boyd and was under no duty to control his actions. This timely appeal followed and calls into question whether a previous management company

of a residential facility owes a duty to investigate or warn of the criminal background of a former employee who murdered a tenant at the facility after it ceased operating the facility.

 Our standard of review in an appeal from an order sustaining preliminary objections in the nature of a demurrer is the same as that which the trial court employs: all material facts set forth in the complaint, as well as all inferences reasonably deducible therefrom, are admitted as true for purposes of review. *Eckell v. Wilson*, 409 Pa.Super. 132, 135, 597 A.2d 696, 698 (1991). However, we cannot accept as true conclusions of law. *Id.* The question presented by a demurrer is whether, on the facts averred, the law says with certainty that no recovery is possible. *Id.* A demurrer should be sustained only in cases where the plaintiff has clearly failed to state a claim on which relief may be granted. *Id.* A demurrer should not be sustained if there is any doubt as to whether the complaint adequately states a claim for relief under any theory. *Id.* at 135–36, 597 A.2d at 698.

 In order to establish a cause of action for negligence, a plaintiff must prove the following four elements: (1) a duty or obligation recognized by law; (2) a breach of that duty; (3) a causal connection between the conduct and the resulting injury, and (4) actual damages. *Morena v. South Hills Health System*, 501 Pa. 634, 642 n. 5, 462 A.2d 680, 684 n. 5 (1983). The crux of the present matter is whether, as Otis Boyd's former employer, appellee owed a duty to appellant to investigate Boyd's violent propensities, and to warn tenants of the same. We find that no such duty exists.

"Duty, in any given situation, is predicated on the relationship existing between the parties *at the relevant time.*" *Id.* at 642, 462 A.2d at 684 (1983) (emphasis added). In *Morena*, the decedent's estate sued paramedics who transported the decedent to a hospital after he was shot. At the hospital, doctors determined that the decedent needed treatment which was only available at another facility and would need to be transported there. Hospital officials asked the paramedics to move the decedent. The paramedics were not informed of the

urgency of situation. After consulting with their supervisor, the paramedics informed the hospital officials that they could not, in fact transport the decedent to the other hospital because of a policy prohibiting inter-hospital transfers. The hospital engaged the services of a private ambulance service to make the transfer; but because of the delay, the decedent died.

Our Supreme Court held that no cause of action lay against the paramedics who transported the decedent to the hospital. The Court held that their duty to the decedent ceased to exist when they successfully transported the decedent to the hospital. *Id.* at 643, 462 A.2d at 685. Further, the existence of any subsequent duty rested upon some knowledge attributable to the paramedics that the transfer was an emergency. *Id.*

Similarly in the present matter, while the appellee managed the apartment complex, it had a duty to the decedent to investigate the background of its employees and warn her if any of the employees had violent propensities. Nonetheless, contrary to appellant's argument, this duty terminated when appellee ceased managing the premises. During its tenure as the management company of the complex, appellant's decedent incurred no harm or injury from appellee's breach of any duty. Once appellee terminated its management function, it owed no further duty to the decedent. Rather, any duty existing when the decedent was killed emanated from the management or owner of the complex at that time.

This Court reached a similar conclusion in *Hoffman v. Sun Pipe Line Co.* 394 Pa.Super. 109, 575 A.2d 122 (1990). In that case, the defendant's pipe line was punctured, causing gasoline leakage into a town house development. The plaintiffs entered into an agreement to purchase one of the townhouses without knowledge of the seepage. Upon learning of the leak, the plaintiffs were unable to rescind the agreement. The plaintiffs sued the pipe line company for damages. In holding that the pipe line company was not liable to the plaintiffs, we reasoned that its liability to successive home owners could be limitless and that the plaintiffs had recourse against the sellers of the property. *Id.* at 118, 575 A.2d at 127.

586

'The paramount concern in both *Morena* and *Hoffman* was that the concept of "duty" in negligence law is limited. As the panel in *Hoffman* stated:

> Even where a harm to a particular plaintiff may be reasonably foreseeable from the defendant's conduct, and that conduct is the cause-in-fact of the plaintiff's harm, the law makes a determination that, at some point along the causal chain, liability will be limited. The term "proximate cause", or "legal cause" is applied by courts to those considerations which limit liability, even where the fact of causation can be demonstrated. Because of convenience, public policy, or a rough sense of justice, the law arbitrarily declines to trace a series of events beyond a certain point, as no longer a "proximate" or "legal" consequences [sic] naturally flowing from the wrongdoer's misconduct. To put it simply, at a certain point, negligent conduct will be viewed as too remote from the harm arising to the plaintiff, and thus not a substantial factor in bringing about the plaintiff's harm.

Whether the analysis proceeds in terms of "duty", "foreseeability", or "proximate cause", we must remain mindful of Prosser and Keeton's admonition that our essential inquiry in these cases is the same:

> in all of these proposed rules and formulae the courts and writers have been groping for something that is difficult, if not impossible, to put into words: some method of limiting liability to those consequences which have some reasonably close connection with the defendant's conduct and the harm which it originally threatened, and are in themselves not so remarkable and unusual as to lead one to stop short of them.

*Id.,* 394 Pa.Super. at 115–16, 575 A.2d at 126 (citations omitted). *See also Glick v. Martin & Mohler, Inc.,* 369 Pa.Super. 428, 535 A.2d 626 (1987), *allocatur denied,* 519 Pa. 665, 548 A.2d 255 (1988) (duty cannot be overly broad and must be specifically defined).

In the present case, policy considerations, too, favor the finding that appellee is not liable to the estate. Appellee was

not the management company operating the apartment building when Boyd killed the decedent. Any duty flowing to decedent necessarily terminated when appellee ceased its management of the facility and its employment of Boyd. To hold otherwise would be to allow appellant to maintain causes of action against a limitless number of entities which, through the natural course of events, caused Boyd to be in a position to harm the decedent. We decline to permit such endless liability. Moreover, we are further persuaded of the wisdom of our result as appellant may still maintain a cause of action against the owners and operators of the facility at the time Boyd fatally injured the decedent. *See Hoffman v. Sun Pipe Line Co.,* 394 Pa.Super. at 118, 575 A.2d at 127. Upon proper proof, the estate will be entitled to full remuneration from those entities.

We are also cognizant of appellant's citation to our decision in *Coath v. Jones,* 277 Pa.Super. 479, 419 A.2d 1249 (1980), but find it to be inapposite. In that case, we held that a customer of an electronic service company had a cause of action against the company for injuries she sustained at the hands of a former employee of the service. We held that "an employer may be negligent if he knew or should have known that his employee had a propensity for violence and such employment might create a situation where the violence would harm a third person." *Id.* at 482, 419 A.2d at 1250. Although the *Coath* case involved a former employee of the service company, we found it necessary for the employer, knowing of the dangerous propensities of the employee, to warn the customers that he was no longer employed, thereby prohibiting the employee's entrance into the customer's home. *Id.* In the present case, however, appellee terminated its relationship *with the decedent and Boyd* when it ceased managing the complex. Nonetheless, Boyd was still employed at the complex by the new management company and was permitted access to the apartments. The duty befell on the new management to warn tenants about Boyd. Finding no cause of action to exist in favor of appellant against appellee, we affirm the order of the trial court.

Order affirmed.