IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Dennis Morgan,                          :
                    Appellant          :
                                       :    No. 1984 C.D. 2015
            v.                         :
                                       :    Argued: May 12, 2016
Southeastern Pennsylvania              :
Transportation Authority               :


BEFORE:    HONORABLE RENÉE COHN JUBELIRER, Judge
           HONORABLE PATRICIA A. McCULLOUGH, Judge
           HONORABLE DAN PELLEGRINI, Senior Judge


*OPINION NOT REPORTED*

MEMORANDUM OPINION
BY JUDGE McCULLOUGH                              FILED:  July 6, 2016


            Dennis Morgan (Morgan) appeals from the June 9, 2015 order of the
Court of Common Pleas of Philadelphia County (trial court) denying his motion for
post-trial relief following a jury verdict in favor of the Southeastern Pennsylvania
Transportation Authority (SEPTA) on his claim of negligence.  We affirm.


**Background**

            The facts may be summarized as follows.  On August 31, 2012, at
approximately 2:00 p.m., Morgan arrived at the Fern Rock subway station, which is
located at the northern end of Philadelphia's Broad Street Subway Line.  Morgan was
leaving the area of the northbound subway that had just pulled into the Fern Rock
station and then walked across the platform to the subway trains waiting on the

southbound side. Before Morgan crossed the platform, all of the southbound subway train doors were already closed. Morgan did not wait for the next train to arrive and enter a subway car through open passenger doors. Instead, while carrying a red plastic shopping bag containing items in one hand, Morgan used his other hand to open the safety gate located between the third and fourth cars. By this time, the subway train doors had been closed for nearly ten seconds. Using his one arm and hand, Morgan opened the safety gate and then attempted to climb over the three safety chains between the two train cars, at which point the subway train started to move out of the station. As a result of his precarious position at the moment the subway train started to move, Morgan lost his balance, fell between the cars, and was dragged under the train. The passengers began screaming, the train's engineer activated the emergency brake, and Morgan was transported to Einstein Hospital to receive treatment for devastating and permanent injuries, including amputation of part of his left foot, fractures in his spine and hip, nerve damage in his spine, and a "drop foot." The incident was captured on video, from both the exterior subway platform and the interior of the train, by video cameras maintained by SEPTA. (Trial court op. at 1-2.)

On March 31, 2014, Morgan filed a civil action against SEPTA, asserting a negligence claim and alleging that its employees and/or agents knew, or should have known, of his position between the cars. SEPTA filed an answer and later a motion for summary judgment, which the trial court denied. *Id.* at 2.

Prior to trial, SEPTA filed a motion *in limine*, seeking to preclude Morgan from introducing evidence relating to a prior incident where an individual named Shawn Hood (the "Hood incident") was killed while attempting to board a

2

subway train at the Broad & Olney subway station. The trial court determined that the two incidents were factually distinct and granted SEPTA's motion. *Id.* at 4-5.

Morgan also filed a motion *in limine*, seeking to preclude SEPTA from introducing evidence of his alleged intoxication. Specifically, Morgan sought to prohibit evidence of his blood alcohol content (BAC) report from Einstein Hospital indicating a BAC of 384.9 mg/dl; photographs of the tracks after the incident, which depicted the red bag that Morgan was carrying and a 40-ounce bottle of Steele Reserve malt liquor located nearby; and Morgan's statement to Einstein Hospital personnel four days after the accident that "he was drinking heavily because a friend got out of jail." *Id.* at 3, 5.

In reply, SEPTA argued that the photographs depicting the red bag and 40-ounce malt liquor bottle are admissible for the limited purpose of showing to the jury the accident scene and the area where Morgan fell. SEPTA also argued that Morgan's statement to Einstein Hospital is admissible to the limited extent that it could be used to attack his credibility. (Certified Record (C.R.) at 29.)

With respect to Morgan's motion *in limine*, the trial court granted it in part and ruled that SEPTA could not introduce evidence of Morgan's BAC for the purpose of proving intoxication. However, the trial court permitted SEPTA to introduce into evidence photographs of the red bag and a 40-ounce malt liquor bottle. Further, during trial, the trial court allowed SEPTA to cross-examine Morgan with the statement that he made to Einstein Hospital personnel that he was drinking heavily. (Trial court op. at 5.)

At trial, Morgan, *inter alia*, submitted the expert testimony of Patrick Reilly, a railroad safety expert, who opined that SEPTA was negligent in failing to

3

have an employee ensure that passengers are safely on the subway train before departing.  (Reproduced Record (R.R.) at 377a-78a.)

The case proceeded to the jury for a verdict.  At the charging conference, Morgan objected to SEPTA's proposed jury charge regarding the duty of care owed by a common carrier.  The trial court overruled Morgan's objection and submitted SEPTA's charge to the jury.  (Trial court op. at 10-11.)

The jury found that SEPTA did not breach its duty of care and rendered a verdict in SEPTA's favor.  Morgan filed a motion for post-trial relief, which the trial court denied by order dated June 8, 2015.  Thereafter, the trial court ordered Morgan to file a Pa.R.A.P. 1925(b) statement.  In this statement, Morgan contended that the trial court erred in precluding evidence of the Hood incident, in admitting evidence of his alcohol consumption, and employing SEPTA's jury charge, which contained language in addition to that used in Pennsylvania's Standard Jury Instructions. *Id.* at 1, 5-6.

In its Pa.R.A.P. 1925(a) opinion, the trial court concluded that evidence of the Hood incident was inadmissible because it occurred years earlier at a different subway stop and on a different track and Morgan did not have any evidence as to whether the subway cars from the two incidents were of the same type.  The trial court further noted that no complaint or lawsuit was ever filed pertaining to the Hood incident and there was no evidence that SEPTA acted negligently.  While recognizing that evidence of prior incidents can be admissible to prove notice of a particular dangerous condition, the trial court determined that Morgan failed to show a substantial similarity between the Hood incident and his accident.  The trial court further found that, given the paucity of details concerning the Hood incident,

4

evidence of the Hood incident would be prejudicial and would likely confuse and mislead the jury. *Id.* at 7.

The trial court next determined that it properly admitted into evidence photographs of the malt liquor bottle. In this regard, the trial court stressed that "SEPTA never argued that [Morgan] was intoxicated or that his putative intoxication was the reason for the accident. Rather, SEPTA's defense was that it was [Morgan's] own reckless behavior that caused the accident . . . ." *Id.* at 8. The trial court stated that the photographs were relevant and admissible for purposes other than to prove intoxication: "Since the photographs were taken immediately after the accident, they were part and parcel to the accident investigation and clearly depicted the accident scene. As such, these photos were directly relevant to the case and essential for the jury to understand what occurred." *Id.*

Similarly, the trial court found that it properly admitted Morgan's statement to Einstein Hospital personnel that he "drank heavily" for impeachment purposes and for refreshing Morgan's recollection because Morgan testified at trial that he had no recollection of the events leading up to the accident or the accident itself. *Id.* at 9.

Finally, the trial court determined that its jury instruction regarding the duty of care owed by a common carrier was proper and in accordance with the law. The trial court noted that its charge followed Standard Jury Instruction 13.120 (Civ) and that Morgan took issue with additional language stating that SEPTA is not a guarantor of passenger safety and only has to protect against foreseeable risks. The trial court determined that decisional law holds that common carriers are not insurers of safety and are not bound to anticipate all possible risks, only foreseeable risks. *Id.* at 11.

5

Accordingly, the trial court denied Morgan's motion for post-trial relief. This appeal ensued.[1,2]

**Discussion**

Evidence of Prior Accidents

Morgan contends that the trial court abused its discretion in precluding him from introducing into evidence the Hood incident to demonstrate SEPTA's knowledge of a dangerous condition and foreseeability. Morgan argues that the two incidents are substantially similar because they occurred on the same street line and in between train cars when the doors were closed. We disagree.

> Evidence of prior accidents involving the same instrumentality is generally relevant to show that a defect or dangerous condition existed or that the defendant had knowledge of the defect. However, this evidence is admissible only if the prior accident is sufficiently similar to the incident involving the plaintiff which occurred under sufficiently similar circumstances. The burden is on the party introducing the evidence to establish this similarity before the evidence is admitted.

*Lockley v. CSX Transp., Inc.*, 5 A.3d 383, 395 (Pa. Super. 2010) (citation omitted). "This limited exception, permitting the introduction of evidence of similar accidents,

---

[1] Although we note that the order of the trial court denying Morgan's motion for post-trial relief was not reduced to judgment by praecipe of either party, as required by Pa.R.A.P. 301, in the interests of judicial economy, we shall "regard as done that which ought to have been done." *McCormick v. Northeastern Bank of Pennsylvania*, 561 A.2d 328, 330 n. 1 (Pa. 1989).

[2] Our scope of review of the denial of post-trial motions is limited to determining whether the trial court abused its discretion or committed an error of law. *Hunter v. City of Philadelphia*, 80 A.3d 533, 536 n.7 (Pa. Cmwlth. 2013).

is tempered by judicial concern that the evidence may raise collateral issues, confusing both the real issue and the jury." *Whitman v. Riddell*, 471 A.2d 521, 523 (Pa. Super. 1984).

Here, SEPTA's report summary concerning the Hood incident is vague and lacking particular details. Specifically, the report states that on February 21, 2007, Hood ran down the steps onto the platform level, tried to board between cars three and four of the train by attempting to "jump over" the gate in between the cars, grabbed onto the platform of the fourth car, and then fell under the fourth car. (R.R. at 195a.)

Although the two accidents could be perceived to be similar in very broad terms, the particular circumstances surrounding them are virtually unknown in significant, material aspects. As SETPA notes in its brief, Morgan did not adduce any evidence concerning the Hood incident with respect to: how long the train was on the platform before the doors closed; how much time elapsed between the time the train doors closed and the train started to move; how much time elapsed between the time the train doors closed and Hood attempted to jump on the train; whether the train was moving when Hood attempted to jump onto the train; the distance between the engineer and where Hood jumped on the train; and whether any bystanders attempted to prevent Hood or warn him from jumping onto the train. Further, as SEPTA also observes in its brief, Hood boarded the train when it was in the middle of a run, while Morgan boarded the train at the start of its route, and it is unknown whether there was a station person on the platform at the time of the Hood incident; whether the Hood engineer followed SEPTA's standard procedures for closing the doors for trains; and whether the Hood engineer would have been able to see Hood had an alternate procedure been in place.

In light of this lack of information, we cannot conclude that the trial court abused its discretion in precluding Morgan from introducing into evidence the Hood incident. *See also Lynch v. McStome & Lincoln Plaza Associates*, 548 A.2d 1276, 1279 (Pa. Super. 1988) (upholding the inadmissibility of prior accidents listed in a computer printout where the plaintiff was injured in an elevator when it abruptly stopped; although the printout contained phrases like "escalator stopped abrupt," there was no indication in the printout "of the circumstances of or causes for the reported incidents."). Accordingly, Morgan's argument does not warrant relief.

## Jury Charge on the Duty of a Common Carrier

Morgan next contends that the trial court erred in charging the jury on the duty owed by a common carrier to passengers. While admitting that the trial court charged the jury in accord with Standard Jury Instruction 13.120 (Civ), regarding the "highest" standard of care owed by common carriers,[3] Morgan objects to the inclusion of additional language stating that SEPTA is not a guarantor of the safety of its passengers and only has to guard against foreseeable risks. According to Morgan, this portion of the charge confused the jury and impermissibly intermingled the concepts of duty of care and foreseeability. Again, we disagree.

Initially, we note that a trial court has wide discretion in phrasing jury instructions. *Gaylord ex rel. Gaylord v. Morris Township Fire Department*, 853 A.2d 1112, 1115 (Pa. Cmwlth. 2004).

---

[3] In this respect, the trial court charged the jury as follows: "Well, SEPTA as a common carrier does have a duty to its passengers as recognized by the law. This is what that duty is: Under Pennsylvania law, a common carrier must use the highest standard of care in operating its vehicle and transporting [its] passengers. So SEPTA is the common carrier and must use the highest standard of care." (R.R. at 626a.)

8

> It is clearly the law of this Commonwealth that when reviewing a trial judge's charge to the jury it must be viewed as a whole. . . .
>
> [J]ury instructions must be upheld if they adequately and accurately reflect the law and are sufficient to guide the jury in its deliberations. . . . Unless the charge as a whole can be demonstrated to have caused prejudicial error, there will not be a reversal for isolated inaccuracy. A charge should be found adequate unless the issues are not made clear to the jury; the jury is confused by what the judge said or there is a statement in a charge that amounts to a fundamental error.

*Clack v. Department of Transportation*, 710 A.2d 148, 152-53 (Pa. Cmwlth. 1998) (citations omitted); s*ee Commonwealth v. Williams*, 732 A.2d 1167, 1187 (Pa. 1999).

> Here, the objected to part of the charge reads as follows:
>
> The law does not impute that SEPTA is the guarantor of safety or required to insure against all possible risk. Rather, the carrier or SEPTA, in this case, has the higher duty to protect against foreseeable risks. Okay. So that's the duty of care. They have to protect against foreseeable risks.

(R.R. at 626a-27a.)

In Pennsylvania, although a common carrier must exercise the highest duty of care, "the carrier is not an insurer of its passengers' safety. . . ." *LeGrand v. Lincoln Lines, Inc.*, 384 A.2d 955, 956 (Pa. Super. 1978). Further, the negligence element of duty "is not sacrosanct in itself, but is only an expression of the sum total of those considerations of policy which lead the law to say that the plaintiff is entitled to protection." *Hoffman v. Sun Pipe Line Company*, 575 A.2d 122, 125 (Pa. Super. 1990) (citation omitted). Indeed, the concepts of duty and foreseeability are inexorably intertwined because the scope of the duty is limited to those risks which are reasonably foreseeable by the defendant in the particular circumstances. *Zanine v. Gallagher*, 497 A.2d 1332, 1334 (Pa. Super. 1985) (concluding that the defendant owed no duty of care to guard against unforeseeable risks). In light of this case law,

9

we conclude the trial court's charge to the jury accurately reflected the law and did not tend to mislead or confuse the jury. Consequently, Morgan's argument lacks merit.

Evidence of Alcohol Consumption

Finally, Morgan argues that the trial court erred in permitting SEPTA to question him about his statement to Einstein Hospital personnel that he had been drinking heavily and in admitting photographs of the 40-ounce malt liquor bottle. Morgan contends that under prevailing case law, evidence of alcohol consumption is inadmissible as unfairly prejudicial unless it reasonably establishes intoxication or impairment to the degree that an individual is unfit for the given activity.

"The admission or exclusion of evidence is a matter within the sound discretion of the trial court, which may only be reversed upon a showing of a manifest abuse of discretion. To constitute reversible error, an evidentiary ruling must not only be erroneous, but also harmful or prejudicial to the complaining party." *Lock v. City of Philadelphia*, 895 A.2d 660, 665 (Pa. Cmwlth. 2006) (citations omitted).

The well-settled rule in Pennsylvania is that "where recklessness or carelessness is at issue, proof of intoxication is relevant, but the mere fact of consuming alcohol is inadmissible as unfairly prejudicial, unless it reasonably establishes intoxication." *Whyte v. Robinson*, 617 A.2d 380, 383 (Pa. Super. 1992). *See Braun v. Target Corp.*, 983 A.2d 752, 760 (Pa. Super. 2009). "However, while evidence can be found inadmissible for one purpose, it may be admissible for another." *Spino v. John S. Tilley Ladder Co.*, 696 A.2d 1169, 1172 (Pa. 1997).

Here, when ruling on Morgan's motion *in limine*, the trial court did not permit SEPTA to introduce evidence to demonstrate that Morgan was intoxicated. Rather, the trial court allowed SEPTA to introduce the photographs as part of the background of the case and Morgan's statement to Einstein Hospital personnel to attack his credibility if necessary.

Importantly, during his case-in-chief and on direct examination, Morgan's counsel asked Morgan: "Is it possible that earlier in the day, before the accident, earlier in the day of the accident, you may have been drinking?" (R.R. at 419a.) Morgan responded, "It's possible, but I don't remember that. I don't remember nothing that day." (R.R. at 419a.)

On cross-examination, SEPTA questioned Morgan, in pertinent part, as follows:

> Q. And do you recall us speaking with some folks at Einstein Hospital on September 4th just several days after the incident when you indicated to them that you were drinking, you must have been drinking heavily. I guess you were partying on behalf of a friend. Do you know that statement that's attributed to you?
>
> A. I don't remember. . . .
>
> Q. Let me read it [i.e., the medical document] to you. I'll ask you if you remember if [it] was accurate. . . .
>
> \*　　\*　　\*
>
> Q. [I]t indicates that you said that [you were] drinking heavily, because, quote, a friend just got out of jail. Was that true or not?
>
> A. I don't remember a lot.
>
> \*　　\*　　\*

11

Q. So do you remember drinking heavily because a friend had just gotten out of jail?

A. No.

(R.R. at 429a-31a.)

Shortly thereafter, SEPTA continued to cross-examine Morgan as follows:

Q. You've seen this picture before with the red bag, correct?

A. Correct.

Q. That red bag was your red bag, correct?

A. Correct.

Q. You also have seen in that picture, if we go to the next photograph, please? You see that, the beer bottle here, sir?

*      *      *

A. I had that before.

(R.R. at 439a-40a.)

It is well-settled that evidence of alcohol consumption is admissible to contradict a witness's statement that he had not been drinking. *Brink v. Kessler*, 165 A. 836, 836 (Pa. 1933). Similarly, here, Morgan testified on direct examination that he did not recall drinking and the evidence of his prior statement to Einstein Hospital personnel and the photographs were admissible to discredit this testimony and undermine Morgan's credibility. *See* Pa.R.E. 607(b) ("The credibility of a witness may be impeached by any evidence relevant to that issue"); Pa.R.E. 803.1, *Comment* ("An inconsistent statement of a witness that does not qualify as an exception to the hearsay rule may still be introduced to impeach the credibility of the witness").

12

Moreover, and perhaps more importantly, by exploring the topic of whether Morgan was drinking on the day of the incident, Morgan's attorney "opened the door" to that issue. Consequently, under our rules of evidence, SEPTA was allowed, during cross-examination, to prove that Morgan had, in fact, been drinking on the day of the incident. *See Commonwealth v. LaCava*, 666 A.2d 221, 234 (Pa. 1995) ("Having 'opened the door' to this subject, appellant cannot now complain because the Commonwealth chose to further examine what was behind that door."); *Commonwealth v. Ford*, 650 A.2d 433, 442 (Pa. 1994) ("A defendant's prior criminal record is not admissible as evidence. Where the defendant opens the evidentiary door concerning his past criminal record, though, the Commonwealth is allowed to cross-examine on this point."). To the extent that Morgan believes that SEPTA's evidence was unfairly prejudicial and suggestive of intoxication, it was nevertheless admissible, and it was Morgan's obligation to request a curative and/or limiting instruction, which he did not do. *See* Pa.R.E. 105 ("If the court admits evidence that is admissible . . . for a purpose – but not . . . for another purpose – the court, on timely request, must restrict the evidence to its proper scope and instruct the jury accordingly."); *Mount Olivet Tabernacle Church v. Edwin L. Wiegand Division*, 781 A.2d 1263, 1275 (Pa. Super. 2001) ("Generally, in the absence of extraordinary circumstances, a prompt and effective curative instruction which is 'directed to the damage done' will suffice to cure any prejudice suffered by the complaining party."). Therefore, on this record, we conclude that the trial court did not commit evidentiary error and Morgan's final issue is meritless.

**Conclusion**

For the above-stated reasons, we affirm the trial court's order denying Morgan's motion for post-trial relief and remand for a new trial. More specifically, we conclude that the trial court did not err in precluding evidence of a prior accident, namely the Hood incident. We further conclude that the trial court's charge to the jury pertaining to the duty owed by a common carrier was in accordance with the law and, therefore, proper. Finally, we conclude that the trial court did not err in admitting evidence of Morgan's alcohol consumption for the limited purpose of impeaching credibility and as background evidence of the accident scene.

Accordingly, we affirm the trial court's order denying Morgan's motion for post-trial relief.

_____
PATRICIA A. McCULLOUGH, Judge

14

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Dennis Morgan,                              :
                Appellant           :
                              :
                              :   No. 1984 C.D. 2015
             v.                         :
                              :
Southeastern Pennsylvania                   :
Transportation Authority                    :

## *__ORDER__*

AND NOW, this 6th day of July, 2016, the June 9, 2015 order of the Court of Common Pleas of Philadelphia County (trial court) is affirmed.


                                _____
                                PATRICIA A. McCULLOUGH, Judge